RECEIVED
OCT 18 2012
AT 8:30_____M
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIBU MEDIA, LLC. | CIVIL ACTION NO. 2:12-CV-05091-SRC-CLW |
| Plaintiff, | |
| vs. | MOTION TO QUASH OR MODIFY SUBPOENA |
| JOHN DOES 1-22, | |
| Defendants. | |

## MOTION TO DISMISS AND/OR SEVER COMPLAINT AGAINST DEFENDANT JOHN DOE 11 AND QUASH SUBPOENA AGAINST SAME

I, John Doe #11, respectfully move the court for dismissal or severance of my case in the above captioned matter and motion to quash the subpoena served on my Internet Service Provider, Comcast Corporation.

I have never committed the acts alleged by the plaintiffs. After receiving a letter from Comcast Corporation advising me that it had been subpoenaed to release my identity and contact information in this matter, I began to research Malibu Media, LLC and similar cases brought by others. My internet research has revealed that in cases associated with Malibu Media, LLC, when the subpoenaed information is turned over to the plaintiffs, the defendants, guilty or innocent, receive demand letters. These letters typically demand from $2500 to $7500 and in some cases in excess of $13000 for settlement to avoid dealing with threatened lawsuits, and the subsequent telephone calls, which have been reported as persistent if not harassing, are the reason I am filing this motion. I respectfully request that I be allowed to make this motion anonymously without revealing my personally identifying information as to do otherwise would defeat the purpose of this motion.

I base this motion on four factors:

(1) improper joinder,

(2) the person using a device connected to the internet at any given time is not necessarily the individual to whom the involved Internet Protocol address (IP address) is registered,

(3) even the MediaAccess Control (MAC) address will often indicate on the wireless router connected to the internet but cannot be relied upon to determine who accessed the internet at any particular time, and

(4) the inability to identify who actually accessed the internet through given IP and MAC addresses introduces an unacceptable degree of uncertainty with regard to the identification of actual wrongdoers.

### 1. Improper Joinder

To minimize court costs while suing or threatening to sue as many individuals as possible, Plaintiff's counsel, Patrick J Cerillo, is using improper joinders as been typical in Malibu Media, LLC suits alleging copyright infringement through BitTorrent. Information retrieved from Justia Dockets and Filings (http://dockets.justia.com) indicates that Mr. Cerillo filed 18 lawsuits on behalf of Malibu Media, LLC in the New Jersey District Court between May 22, 2012 and October 5, 2012. Altogether, these 26 Malibu Media, LLC lawsuits involve 605 defendants; they range from 7 to 81 defendants each, averaging 33. Thus far in 2012, Malibu Media LLC has filed more than 150 suits in California, Colorado, the District of Columbia, Florida, Maryland, New Jersey, York, Pennsylvania, Texas and Virginia against numbered Does using similar tactics. These suits collectively name almost 2200 defendants, averaging almost 17 per case. Federal courts have previously recognized this improperness of joinder. In a BitTorrent case nearly identical to this one, CP Productions, Inc. v. Does 1-300 case 1:201 0cv06255, the court noted before dismissal:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap - if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

In the same vein, in the Southern District of New York, Judge Colleen McMahon wrote when dismissing all but one of the defendants (John Doe #1) in Digital Sins, Inc. vs. John Does J-245 Caye J:JJ-cv-08J7()"cM, "They are dismissed because the plaintiff has not paid the filing fee that is Statutorily required to bring these 244 separate lawsuits." In that case the underpayment exceeded $85,000.00.

Commenting on the same case, Judge Milton Shadur wrote:

> This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants - this one seeking the

nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, 1 CP's counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

In VPR Internationale vs. Does 1-1017 case 2:20J1cv02068), Judge Harold A. Baker wrote in denying a motion for expedited discovery:

Plainly stated, the court is concerned that the expedited ex parte discovery is a fishing expedition by means of a perversion of the purpose of and intent of Fed. R. Civ. P. 23.

In the Northern District of California, these nearly identical BitTorrent cases have been severed for improper joinder:

- Pacific Century International LTD v. Does 1-101 case 4:20J1cv02533 (severed does 2-101)
- IO Group, Inc. v. Does 1-435 case 3:2010cv04382 (severed does 2-435)
- Diabolic Video Productions, Inc v. Does 1-2099 case 5:2010cv05865 (severed Does 2-2099)
- New Sensations, Inc v. Does 1-1768 case 5:2010cv05864 (severed Does 2-1768)

In yet another nearly identical BitTorrent case, filed in the Northern District of California, Millennium TGA, Inc v. Does 1-21 case 3:20J1cv02258, Judge Samuel Conti found the same joinder problems, and wrote in his order denying request for leave to take early discovery, "This Court does not issue fishing licenses;" Two other BitTorrent cases in the Northern District of California by the same plaintiff, Boy Racer, have also been severed for improper joinder:

- Boy Racer, Inc v. Does 1-52 case 5:20J1cv02329 (severed Does 2-52)
- Boy Racer, Inc v. Does 1-71 case 5:20J1cv01958 (severed Does 2-72)

In Case 1:12-cv-00163-CMH-TRJ, Document 10, United States Magistrate Judge Thomas Rawles Jones, Jr. of the United States District Court for the Eastern District of Virginia consolidated nine cases, eight in which Malibu Media, LLC was the plaintiff and recommended that "all but the first Doe defendant in each of these matters be severed, and that the plaintiffs

then be permitted to serve discovery on these remaining defendants' internet service providers to learn their identities."[ pps.3-4] In the same document, the Judge cites precedence from two earlier cases arguing against joinder (p. 7, ibid): that "the allegation that defendants used the same protocol on different days and times was insufficient" and that "the span of time covering the activity made the argument for joinder "unpersuasive." The same logic applies to the present case. The complaint shows that the alleged infringements took place as early as May 1, 2012 (Doe #22) and as recently as July 31, 2012 (Doe #12). Note that the dates span nearly three months and on only one occasion were any two defendants alleged to be active on the same date.

**2. The person using a device connected to the internet at any given time is not necessarily the individual to whom an implicated Internet Protocol IP address) is registered.**

There are many circumstances in which the person to whom an Internet Protocol address may be registered is not the only person able to access the internet through that address. The fact that the person to whom an IP address is registered may not be the only individual who can access the internet through that address and the implications of this have been recognized previously by the courts. In Case 2:II-cv-03995, the Honorable Gary Brown noted that "it is no more likely that the subscriber to an IP address carried out a particular computer function-here the purported illegal downloading of a single pornographic film-than to say an individual who pays the telephone bill made a specific telephone call" [pg 6]

**3. Even a valid Media Access Control (MAC) address will often indicate only the wireless router connected to the internet and cannot be relied upon to determine who accessed the internet at any particular time.**

The identity of devices connected to the internet through an IP address is often limited to the first in a chain of devices. With the advent of the wireless router, often this will be the only device that can be identified. However, ownership of a wireless router, even a secured one, is not tantamount to being the only possible user of the device. Therefore, even the MAC address logged by the Internet Service Provider is of limited and possibly no value in determining who accessed the internet at a given moment or even what computer or other device was used to do so. This has explicitly been recognized in the courts by Judge Gary R. Brown who wrote in RE: BITTORRENT ADULT FILM COPYRIGHT INFRINGEMENT CASES (Case 2~JJ~cv-03995-DRH-GRB Document 39) that:

unless the wireless router has been appropriately secured (and in some cases even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film. As one court noted:

In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connect to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet

of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router strength could be increased beyond 600 feet if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass the security using publicly available software. [pg 7]

**4. The inability to identify who actually accessed the internet through implicated IP and MAC addresses introduces an unacceptable degree or uncertainty with regard to the identification or actual wrongdoers.**

If, as may often be the case, it is not possible to identify the device used to access the internet, much less the person operating the device, simply classifying all persons to whom implicated IP addresses are registered as offenders creates a significant possibility, even probability if repeated often enough, that a number of persons who have done no wrong will be served and possibly elect to settle claims out of court as an expedient. For some this may be a simple business decision: it will cost less to settle than to litigate; for others who lack the financial resources to mount an adequate defense, the "choice" is forced upon them. This creates the potential for a coercive and unjust settlement and this has also been recognized by the courts in various jurisdictions. The Honorable Gary R. Brown writing on Case 2: 11-cv-03995 when evaluating the potential for coerced settlements noted that:

> Many courts evaluating similar cases have shared this concern. See, e.g., Pacif-ic Century Int'l, Ltd v. Does 1-37-F. Supp. 2d--, 2012 WL 26349, at *3 (N.D. IlL Mar. 30,2012) ("the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies settle"); Digital Sin, 2012 WL 263491, at 3 * ("This concern and its potential impact on social and economic relationships, could impel a defendant entirely innocent of the alleged conduct to enter into an extortionate settlement") SBO Pictures, 2011 WL 6002620, at *3 (defendants, whether guilty of copyright infringement or not-would then have to decide whether to pay money to retain legal assistance that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'"). [pg 18]

The Honorable Harold A. Baker noted when commenting on VPR Internationale v. DOEr., 1017 (2:11-cv-02068-HAB -DGB # 15), that:

> Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect." Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case. In its order denying the motion for

expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions. Order, die 9. [pg 3]

Magistrate Judge Harold R. Loyd writing in regard to "Hard Drive Productions v. Does 1-90, C/1-03825 HRL stated:

> Here, plaintiff has failed to allege that its claims against the 90 Doe defendants arise from "a single transaction or a series of closely related transactions." Instead, plaintiff provides a list of all 90 Doe defendants, identified by IP addresses, and the date and time they each appeared in the swann over a period of 63 days. See Complaint, Exh. A. Plaintiff also alleges that each Doe defendant "entered the same exact BitTorrent swann and "reproduced and distributed the Video to multiple third parties." Complaint 29. But, plaintiff's counsel admitted at the hearing that plaintiff could not truthfully allege that any of the Doe defendants actually transmitted pieces of the copyrighted work to or from one another. [pg 10]

In Case 2:11-cv-03995 which addressed three cases (Malibu Media, LLC v. John Does 1-26, CV 12-1147 (J..)) (GRB). Malibu Media, LLC v. John Does 1-1I, C'V 12-1I50 (LDW) (GRB), and Patrick Collins, lnc. v. John Does 1-9, CV 12-1154 (ADS) (GRB)) U.S. Magistrate Judge, the Honorable Gary Brown in discussing these issues noted that: "'These developments cast doubt on plaintiff's assertions that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." See, e.g., Alalibu 26, CompL At ~9, or that subscribers to the IP addresses listed were actually the individuals who carried out the complained of acts. As one judge observed:

> Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often "the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. The risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2" [pgs. 7 – 8].

Judge Brown also observed that another judge had previously noted:

> the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes... By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed. [ibid, p. 81]

Finally, also writing in case 2: 11-cv-03995, Judge Brown described the litigation practices in cases where pre-service discovery is the basis for identifying putative defendants as "abusive" and went on to state:

Our federal court system provides litigants with some of the tiniest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." Patrick Collins, Inc. v. Does 1-3757, 2011 U.S. Dist. LEXIS 128029, at *6-7 (N.D.Cal. Nov. 4, 2011).

For these reasons, I request the Court to quash the subpoena for identifying and contact information served on Comcast Corporation for me, John Doe #11, only.

Dated: 10-16-2012

Respectfully submitted,

*s/John Doe 11*

John Doe

*Pro se*

## CERTIFICATE OF SERVICE

I, John Doe 11, hereby certify that on October 17, 2012, I forwarded a true and correct copy of Motion to Dismiss and/or Sever Complaint against John Doe 11 and Quash Subpoena against Same to Patrick J. Cerillo, Esq., Patrick J. Cerillo, LLC, 4 Walter Foran Boulevard, Suite 402, Flemington NJ 08822 by United States first class mail.

s/John Doe 11

John Doe

*Pro se*